UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

MELVIN BARHITE, JR.,

        Plaintiff,                      Case No. 2:13-cv-169

v.                                            Honorable Gordon J. Quist

W. TRIERWEILER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Trierweiler, Lesatz, Smith, Rutter, Schram, Hursch, Safo, Denman and Fleury. The Court will serve the complaint against Defendants Phillipson, Lundemuth, Krick, Berhane, Scott, Kinsel, Westcomp, Staley and Bauman.

**Discussion**

    I.        Factual allegations

Plaintiff Melvin Barhite, Jr. presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the E.C. Brooks Correctional Facility, though the actions about which he complains occurred while he was housed at the Alger Correctional Facility (LMF) and the Carson City Correctional Facility (DRF). Plaintiff sues the following LMF employees: Grievance Coordinator W. Trierweiler; Warden C. Bauman; Deputy Wardens D. Lesatz; Inspectors W. Smith and L. Rutter; Correctional Officer (unknown) Fleury; Assistant Resident Unit Supervisors (ARUSs) L. Phillipson, G. Schram, J. Denman, and T. Safo; Lieutenant (unknown) Hursch; Resident Unit Manager Lundemuth; Doctor A. Berhane; Nurses C. Scott, J. Kinsel, and G. Staley; and Physician Assistant A. Westcomp. He also sues DRF Deputy Warden L. Krick.

In his amended complaint, Plaintiff principally argues that he has been denied his constitutional rights to due process by various Defendants' interference with the grievance process, the futility of the grievance process, and the improper handling or rejection of his many grievances. For example, Plaintiff complains that Defendant Fleury charged him with the possession of stolen property for possessing six slices of bread, excess grievance forms, and five blankets. Plaintiff claims that the charges were a lie. He argues that he properly possessed the bread, as it had been sent with the meals and snack bag he had received that day, as part of his diabetic diet. He also could not have stolen forms that were readily available to prisoners on a bookcase in the unit. Further, he claims that he had two bedrolls, each of which contained two blankets. He had a medical accommodation for a second bedroll. The fifth blanket had been given to him by a first-shift officer to place next to the wall alongside his bed, where the cell leaks water.

Plaintiff filed a grievance about the incident, asserting that Fleury had lied by saying that Plaintiff stole something that he could not have stolen. Defendant Trierweiler rejected the grievance and returned it with a note and a copy of the relevant portion of the policy, indicating that "A GRIEVANCE SHALL BE REJECTED BY THE GRIEVANCE COORDINATOR IF IT CONTAINS [. . .] LANGUAGE WHICH DEMEANS THE CHARACTER [. . .] OF ANY PERSON." (Am. Compl., docket #20 at 16, Page ID#118.) Plaintiff claims that saying that Fleury lied was an accurate description of the conduct and was therefore proper under the policy, so Trierweiler should not have rejected the grievance. Plaintiff explained this to Trierweiler, who rejected the argument, saying that Plaintiff's statement that Fleury lied was not a fact, but merely Plaintiff's opinion. Plaintiff concludes that Trierweiler will not allow the filing of grievances that state that a staff member lied. Plaintiff claims that he is entitled to file grievances.

Plaintiff next complains that, before he was transferred from Chippewa Correctional Facility (URF) to LMF, URF officials had taken certain of Plaintiff's property, including unspecified medical property, and Plaintiff's grievance about the property was still pending. The property should have been moved with Plaintiff, but it was not, and URF officials denied having any property. Plaintiff filed a grievance, which Trierweiler rejected because it was vague, contained multiple issues, and, to the extent that the grievance was about property that had been taken at URF and was subject to a grievance filed at URF, policy would have required the property to remain at URF until the grievance process was complete. Trierweiler also wrote that, to the extent Plaintiff's complaint was about property lost during the transfer, Plaintiff was required to file a separate grievance. Plaintiff claims that Trierweiler is wrong and has made false representations about the property taken at URF.

Plaintiff then filed a grievance about Defendant Trierweiler, complaining that Trierweiler lied in order to reject the grievance. Plaintiff sent the grievance directly to Defendant Smith, as the inspector, because the grievance was about the grievance coordinator himself. Smith forwarded the grievance to Trierweiler, who then rejected the grievance, which was approved by Defendant Lesatz. At Step II, because he knew that he needed additional space, Plaintiff attached four copies of the Step II form. The document was returned to him to rewrite on the form. Plaintiff complains that this also was in violation of policy and allegedly deprived Plaintiff of his right to redress.

In another set of allegations, Plaintiff explains that he has post-polio syndrome that requires him to use KAFO leg braces and a wheelchair. Plaintiff claims that he is a qualified person under Title II of the Americans with Disabilities Act (ADA)[1] and under the Rehabilitation Act of 1983 (RA)[2], and he asserts that he needs to be housed in barrier-free, wheelchair-accessible housing. Because of his disabilities, Plaintiff also is qualified by the Library of Congress to receive audio books. Plaintiff has for years been allowed to possess two audio players, a digital player and a cassette player, at other MDOC facilities. When Plaintiff moved from URF to LMF, his players were confiscated, and he was told that he was not entitled to them because he is not blind. Plaintiff filed a grievance on November 6, 2012, which was rejected as vague and illegible. Plaintiff then requested a Step II grievance form, which Defendant Bauman denied on December 18, 2012, stating that the grievance was vague because it did not name individual staff and further stating that his participation in the Talking Book Library Program was canceled on July 20, 2012, because of his

---

[1] 42 U.S.C. §§ 12131 et seq.

[2] 29 U.S.C. § 794(a).

misuse of the machine. Because Plaintiff's family kept calling the facility, the machines were found three weeks later, and Plaintiff was told that he could keep them. Shortly thereafter, Defendant Bauman informed Plaintiff that Health Care staff had concluded that Plaintiff did not have a physical need for the players, and they were sent back to the library. The library then informed Plaintiff that they had not received the players, leaving Plaintiff liable for the cost.

On November 2, 2012, Plaintiff wrote to the library. Plaintiff claims that he need not put a stamp on the letter, as he only has to mark it as "FREE MATTER FOR THE BLIND AND HANDICAPP." (*Id.* at 26, Page ID #128.) The mail room sent the letter back, saying that it required postage. Plaintiff took it to Defendant Phillipson, who purportedly became nasty and told Plaintiff that he was not special and that he had to put postage on the letter. Plaintiff filed a grievance, which was denied at Step I because Plaintiff is not legally blind that therefore is not eligible for free mail. Plaintiff's Step II grievance was rejected as vague. Plaintiff filed a Step III grievance, but he does not indicate the result. Plaintiff complains that, by denying him participation in the talking-book program and by taking his players, URF staff has discriminated against him in violation of the ADA and RA. He also alleges that, by denying his grievances, Defendants Lindemuth, Schram, and Phillipson have denied him his right to redress under the First Amendment.

Plaintiff next complains that, on December 9, 2012, while he was housed at the Parnall Correctional Facility (SMT) in Jackson, Michigan, he requested permission to have his wheelchair serviced. Plaintiff's family, who live in Ohio, picked up the wheelchair, serviced it, and returned it to the facility. In the meantime, however, Plaintiff had been moved to the upper peninsula at URF. Plaintiff claims that the move violated another provision of the ADA, prohibiting prisons from denying prisoners with disabilities visits with family members by transferring them to distant facilities where they would not otherwise be housed. Plaintiff filed a grievance, which

-5-

objected to both the move and the change to his custody level from Level I to Level II. Defendant Trierweiler rejected the grievance as not being clear and concise. Trierweiler added that Plaintiff had no right to be housed at a particular facility. Defendant Bauman denied the Step II grievance on January 14, 2012, because Plaintiff used language that demeaned the character of another person.

Plaintiff complains that the transfer really resulted from the lack of Level I facilities that have wheelchair-accessible cells. The lack of such cells caused Plaintiff to be placed in segregation while at DRF in March 2012, because it was the only cell that could somewhat accommodate his medical and disability needs. At that time, Defendant Deputy Warden Krick raised Plaintiff's security classification to Level II, because no Level I facilities were available at the institution. Plaintiff contends that Defendant Krick's action violated the ADA. Plaintiff also contends that his transfer to DRF must have been intended as punishment by some unidentified person, because DRF lacked the ability to adequately house Plaintiff.

On December 11, 2012, Plaintiff filed a grievance about not being placed on indigent status for November 2012. His grievance was rejected as duplicative of a grievance Plaintiff filed about his indigent status in October 2012. Plaintiff appealed to Step II, but Warden Bauman simply agreed with the Step-I decision. Plaintiff again claims that his rights to seek redress and to due process were violated.

Plaintiff filed another grievance on January 9, 2013, complaining that the shower water was too hot. Trierweiler rejected his grievance at Step I, because it was vague and illegible. Defendant Bauman denied the grievance, advising Plaintiff that the water temperature in the housing-unit showers was monitored and found to be in compliance. Meanwhile, because he believed Trierweiler's rejection was a lie, he filed a grievance against Defendant Trierweiler on January 12, 2013. Thereafter, Trierweiler allegedly violated policy by answering the grievance

himself and rejecting it as vague and duplicative of the original grievance about the water temperature. Defendant Lesatz approved the denial. Plaintiff was told to rewrite his Step-II grievance, but he elected to go straight to Step III. Plaintiff reiterates that his right to seek redress and his right to due process were violated.

Still not satisfied, on January 24, 2013, Plaintiff filed a grievance about Defendant Trierweiler's wrongful decision to review the January 12 grievance. Trierweiler rejected the grievance, because Plaintiff had not appealed his prior grievance to the next step.

On January 18, 2012, Plaintiff filed yet another grievance, this time complaining about the quartermaster's failure to issue Plaintiff his necessary medical shoes. Plaintiff sent the grievance to Defendant Inspector Rutter, who forwarded the grievance to Trierweiler. Defendant Trierweiler ultimately rejected the grievance as duplicative, and, on February 20, 2013, Defendant Bauman upheld the Step-I decision. Plaintiff again complains that the issue was improperly handled under the policy, denying him his right to redress. He sent a letter to the MDOC central office in Lansing, complaining about the inadequate grievance handling at LMF. Plaintiff received a response advising him that, once he had received his response at Step III, he would be entitled to bring his claim to court.

Shortly before Plaintiff filed his lawsuit, the prison unit's handicap-accessible elevator began to break down. On several occasions, the elevator would shake and flip the circuit breaker. Plaintiff told Defendant Schram about the problem, but nothing was done. Defendant Schram told Plaintiff that, if the elevator broke down, Schram would move Plaintiff to a different unit, which housed Level-IV prisoners. Plaintiff claims that Schram therefore expressed an intent to punish Plaintiff for the failure to maintain the elevator. Plaintiff wrote Defendant Grievance Coordinator Trierweiler, seeking a grievance form, because he had by that time been placed on

modified grievance access.[3] Defendant Trierweiler provided a grievance form, and, on March 14, 2013, Plaintiff filed the grievance. Defendant Phillipson interviewed Plaintiff about the grievance on March 18, 2013. On March 19, 2013, Plaintiff received Phillipson's response, indicating that the elevator was inspected twice a year by a licensed elevator technician and that the last inspection was August 15, 2012. Defendant Phillipson stated that she ran the elevator up and down a number of times and found no problem.

Plaintiff alleges that he had drawn the attention of Defendant Fleury, who began to harass Plaintiff. Fleury allegedly wrote three misconduct tickets against Plaintiff. Defendant Hursch conducted a hearing on March 20, 2013, finding Plaintiff guilty. Plaintiff was told that he would be moved to Level-IV custody in Pine Unit. Plaintiff was given his coat and told he was being moved. He was not allowed to put on his leg braces or to put the sides and footrest on his wheelchair. He also was not allowed to put on long pants rather than shorts. Plaintiff complains that he was forced to go outside in the middle of winter in shorts and to hold his feet up as he was transported to the other unit. Once he arrived at the unit, the elevator doors would not open until an officer forced them open. Plaintiff could not go to lunch in the dining hall, but was forced to eat lunch in his cell. In addition, because his property was not properly inventoried and secured, Plaintiff lost a footlocker. Plaintiff filed a grievance on March 28, 2013, complaining about the missing property. Defendant Safo interviewed Plaintiff about his grievance. Defendant Safo talked to Plaintiff's transferring unit, Spruce Unit. On April 2, 2013, Safo responded to the grievance,

---

[3] Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

saying that Plaintiff's property was packed and transported in accordance with policy and that all property had been delivered. Plaintiff complains that, because Defendant Safo lied in the grievance, Plaintiff will not receive payment for his lost property. Further, unidentified staff instructed Plaintiff to stack his footlockers in his shower, preventing him from using the first roll-in shower he had ever been assigned. Plaintiff contends that it took him two weeks to get the footlockers placed in the property room, where they should have been placed from the outset.

On the same day, Plaintiff complained at 8:00 a.m. that he needed to go to health services because he was having a problem using a catheter. When nothing happened by 2:00 p.m., Plaintiff banged on his cell door because he, for the first time, did not have a medical call button. Plaintiff was told that he would be taken to the medical unit. Apparently because of the elevator problem, Plaintiff crawled up the stairs and an inmate carried his wheelchair. When he arrived, medical providers determined that he needed to go to the hospital. Plaintiff was given his blue state clothes, but he was not permitted to have his leg braces. Plaintiff had to crawl into a regular van because LMF does not have a handicapped van, notwithstanding having 20 handicapped cells at the facility. Plaintiff had to crawl out of the van at the hospital. The next day, LMF staff called the elevator company to fix the elevator. Plaintiff contends that staff lied in telling him that the elevator was being maintained.

When Plaintiff was released from the hospital, he repeated his crawl into and out of his van. Plaintiff now had his leg braces, but he had to challenge the transport officers, who believed he did not need them until they called health services. Plaintiff also had to crawl into and out of the van for doctor's visits. Plaintiff complains that, should he ever fall, he might never walk again.

Plaintiff complains that he keeps being issued misconduct tickets because he does not allow staff to force him to do anything that violates the disability laws. Because he received 16 misconducts in one-and-one-half years, the Michigan Parole Board denied him parole for at least 12 months.

In his next set of allegations, Plaintiff complains that the LMF dining hall is not barrier-free and wheelchair accessible in all aspects, particularly navigating the food line and bringing the tray to a makeshift wheelchair table. In addition, the table does not accommodate Plaintiff, with his various limitations and his urine collection bag. Plaintiff contends that the entire facility fails to meet the requirements of the ADA and the RA.

Because of his one-and-one-half years of being housed at URF and LMF, Plaintiff's hands and legs have become very badly impaired. During this time, Plaintiff has been deprived of all physical therapy, the only treatment available for Post-Polio Syndrome. Plaintiff alleges that Defendants Berhane, Scott, Kinsel, Staley and Westcomp are responsible for the denial of physical therapy, because they failed to respond to his requests for treatment, thereby violating the Eighth Amendment, the ADA and the RA.

For all these reasons, Plaintiff contends that he has been denied his First Amendment right to seek redress from government, his Fourteenth Amendment right to due process, his Eighth Amendment right to adequate medical care, and his rights under the ADA and the RA.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

>
> **A. Complaints About the Grievance Process – Defendants Trierweiler, Bauman, Lesatz, Smith, Rutter, Schram, Hursch & Safo**

Throughout his complaint, Plaintiff alleges that numerous Defendants have deprived him of his right to petition the government for redress of grievances and his right to due process, based on Defendants' failure to provide a functioning grievance system and their denials or rejections of his grievances. In fact, Plaintiff's only allegations against Defendants Trierweiler, Lesatz, Smith, Rutter, Schram, Hursch and Safo involve their alleged failure to issue, act on, or correctly address his grievances. Plaintiff also alleges that these Defendants violated MDOC policies and procedures in their handling of Plaintiff's grievances.

First, Defendants' alleged failures to comply with administrative rules or policies do not themselves constitute constitutional violations. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff therefore fails to state a claim against any Defendant based on his or her failure to follow MDOC policy.

Second, Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th

Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Third, even if Plaintiff was improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

Finally, to the extent that Plaintiff alleges that Defendants are responsible for causing injury because they either failed to investigate his grievances or improperly responded to his grievances, he fails to state a claim under § 1983. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As a consequence, Plaintiff's allegations that any Defendant violated his rights to redress of grievances and due process because of his or her handling of grievances fail to state a claim. Since Plaintiff's only allegations against Defendants Trierweiler, Lesatz, Smith, Rutter, Schram, Hursch and Safo involve their handling of his grievances, Plaintiff fails to state a § 1983 claim against these Defendants.

### B. Due Process – Property

Plaintiff alleges that Defendant Denman improperly created a personal property form listing the amount of property transferred from Pine Unit to Spruce Unit, after previously telling Plaintiff that there was no prisoner-property receipt.[4] Plaintiff contends that the inaccuracies in the late-created property listing will prevent him from receiving reimbursement for the property contained in his lost footlocker.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in other part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-

---

[4] Plaintiff also complains that Defendant Safo improperly accepted the property receipt as genuine and denied Plaintiff's grievance. As the Court previously discussed, Plaintiff fails to state a claim against Defendant Safo based on his handling of the grievance.

deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a).

Although Plaintiff claims that he will be unable to obtain relief from any state remedy, he does not allege whether he has sought relief from the State Administrative Board. Moreover, in order to satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. As the Supreme Court has instructed, "[a]lthough the state remedies may not provide . . . all the relief which may have been available . . . under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544. Due process only requires that an adequate post-deprivation remedy be available when the deprivation of property occurs. *Id.* at 544. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See*

*Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Because there were adequate post-deprivation remedies available to Plaintiff, his claim against Defendant Denham will be dismissed.

### C. Defendant Fleury

Plaintiff complains that Defendant Fleury charged him with possessing stolen property in his cell, specifically, six slices of bread, excess forms, and excess blankets. Plaintiff also makes a conclusory allegation that Fleury "harass[ed]" him and issued three misconduct tickets against him. (Am. Compl., docket #20 at 35, Page ID#137.)

To the extent that Plaintiff intends to allege that Fleury wrongfully confiscated his property, his claim, as previously discussed, is barred by *Parratt*, 451 U.S. at 544. Moreover, although Plaintiff claims that Fleury "lied" by concluding that the items were stolen (Am. Compl., Page ID#118.), Plaintiff makes no allegations that Defendant Fleury had an improper or retaliatory motive. Plaintiff simply complains that Fleury must have lied in his report because Fleury reached the wrong conclusion about Plaintiff's possession of an unusual amount of property. Plaintiff has no constitutional right to have correctional officials always reach the correct decision. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (emphasis in original). Plaintiff's first set of allegations against Fleury therefore fail to state a claim.

Even assuming that Plaintiff intended to allege that Fleury harassed him and issued three misconducts in order to retaliate against Plaintiff, he fails to state a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected

conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff, however, fails even to allege that Fleury's actions followed the filing of a particular grievance.

Moreover, Plaintiff's allegations are conclusory in all other respects. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff's allegations are wholly

insufficient to suggest any connection with Fleury's improper motive in writing the misconduct tickets. Indeed, Plaintiff does not even argue that he did not commit the actions charged by Fleury. He therefore fails to state a retaliation claim.

For all these reasons, Plaintiff fails to state a claim against Defendant Fleury.

### D. Eighth Amendment

Plaintiff alleges that Defendants Berhane, Scott, Kinsel, Westcomp and Staley violated his Eighth Amendment rights by ignoring his repeated attempts to obtain physical therapy to treat his Post-Polio Syndrome. The Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on these Defendants. Plaintiff makes no other Eighth Amendment claims.

### E. ADA & RA Claims

Plaintiff alleges that numerous Defendants and unnamed others violated the ADA and the RA by failing to provide a working elevator and a handicap-accessible transport van, denying him access to the Talking Book Program, placing him in housing far from his family, transferring him to a higher security level rather than to an accessible prison facility, and failing to provide an accessible cafeteria. Plaintiff names certain individual Defendants respecting portions of the alleged violations, including Defendants Phillipson, Lundemuth, Krick, Berhane, Scott, Kinsel, Westcomp and Staley. Plaintiff also alleges that Defendant Bauman is responsible, as the warden, for the deprivations under the ADA and RA.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under

Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named multiple MDOC officials in both their official and individual capacities.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state

sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants Phillipson, Lundemuth, Krick, Berhane, Scott, Kinsel, Westcomp, Staley and Bauman, in their official capacities. However, neither Title II of the ADA nor the RA provides for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (ADA); *Skibbe v. Mich. Dep't of Corr.*, No. 1:05-cv-175, 2006 WL 625869, at *3 (W.D. Mich. Mar. 9, 2006) (holding that because individual officials are not public entities or programs, they are not liable in their personal capacities under either the ADA or RA). The Court therefore will dismiss Plaintiff's individual ADA and RA claims against these Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Trierweiler, Lesatz, Smith, Rutter, Schram, Hursch, Safo, Denman and Fleury will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Phillipson, Lundemuth, Krick, Berhane, Scott, Kinsel, Westcomp, Staley and Bauman.

An Order consistent with this Opinion will be entered.


Dated: November 6, 2014  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE