UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MELVIN BARHITE,

       Plaintiff,

v.                                 Case No.  2:13-cv-169
                                 HON.  GORDON J. QUIST

W. TRIERWEILER, et al.,

       Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Melvin Barhite filed this *pro se* civil rights action pursuant to 42 U.S.C. §

1983 alleging that Defendants Aster Berhane, M.D. and Amy Westcomb, P.A. violated his rights

under the ADA and RA for failing to order physical therapy to treat his Post-Polio syndrome.

Defendants filed a motion for summary judgment arguing that Plaintiff failed to exhaust his

administrative grievance remedies and failed to establish that Defendants acted with deliberate

indifference to a serious medical need.  (ECF No. 53).

Summary judgment is appropriate only if the moving party establishes that there is

no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the

burden of showing there is an absence of evidence to support a claim or defense, then the party

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth

Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral

resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Plaintiff concedes that he did not exhaust his grievance remedies, but argues that he does not have to because he is asserting a claim under the ADA and RA. Plaintiff argues that to

exhaust his remedies he needed to file a complaint on a department form CAJ-534.  In dismissing Defendants Bauman, Lundemuth, Phillipson, Krick, Scott, Kinsel and Staley, this Court explained that Plaintiff is required to exhaust administrative grievance remedies under the Prisoner Litigation Reform Act prior to bringing a lawsuit that asserts violations of his conditions of confinement including claims under the ADA and RA.  *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) and *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  (ECF No. 52).  Moreover, Plaintiff is asserting that Defendants Berhane and Westcomb failed to provide him with outside physical therapy in violation of his Eighth Amendment rights.  For these same reasons, Defendants Berhane and Westcomb are entitled to dismissal without prejudice for failure to exhaust administrative grievance remedies.

Alternatively, Defendants Berhane and Westcomb argue that they were not deliberately indifferent to Plaintiff's medical needs.  Plaintiff did suffer with a post-polio medical condition while confined at the Alger Correctional Facility.  Defendants argue that Plaintiff's condition was not medically serious at the time that they treated him.  Defendants concede that post-polio syndrome is a progressive condition with no cure.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

> order to state a cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Defendant Berhane asserts that he treated Plaintiff at Alger Correctional Facility between October 2012, and March 20, 2013.  Dr. Berhane reviewed Plaintiff's chart when Plaintiff was transferred into the Alger Correctional Facility on October 10, 2012.  PageID.398-400.  Dr. Berhane renewed Plaintiff's prescription for Loperamide and noted his post-polio condition and accommodations. *Id.* Dr. Berhane examined Plaintiff on October 15, 2012, and ordered medications and accommodations for Plaintiff's condition.  PageID.401-404.  Dr. Berhane attests that post-polio syndrome is a progressive condition without a cure, and treatment of the condition is not specific because symptoms often vary.  While at the prison, Plaintiff was regularly examined and evaluated for his condition.  Plaintiff was examined by Dr. Berhane in Health Care Services on October 31, 2012, November 7, 2012, November 8, 2012, November 20, 2012, and December 4, 2012 .  PageID. 407-420.

Plaintiff first requested physical therapy on January 24, 2013, and was scheduled to see a medical provider.  PageID.421.  Again, on February 3, 2013, Plaintiff requested physical therapy.  PageID.422.  Dr. Berhane attests that there was no urgent need for physical therapy at that time and Plaintiff was notified that he was scheduled to see a medical provider to address the request.  Dr. Berhane saw Plaintiff on February 14, 2013, to address Plaintiff's request for physical therapy.  PageID.423-425.  Plaintiff requested a transfer to a different prison.  Dr. Berhane noted that Plaintiff's muscle tone and bulk were satisfactory.  Dr. Berhane determined that outside physical therapy was not necessary and provided Plaintiff with non-fatiguing exercises that he could perform in his cell or housing unit.  Dr. Berhane also advised Plaintiff to make his transfer request to prison officials because it was not based on a medical  issue.   Plaintiff was provided with a wheelchair, leg braces, access to the elevator, use of a bottom bunk in a ground floor cell, and assistance with

his meals.   On March 19, 2013, Dr. Berhane examined Plaintiff for a mass on his neck. PageID.426-429.

Plaintiff visited with Defendant Westcomb on March 20, 2013.  PageID.430-433. Plaintiff underwent urological surgery on March 21, 2013, and followed-up with Defendant Westcomb the next day. PageID.434-436.  Plaintiff complained on March 29, 2013, that he was not being treated for his post-polio condition. PageID.437.  Defendant Westcomb saw Plaintiff on April 5, 2013.  PageID.438-440.  At that time, she addressed Plaintiff's concerns about his blood pressure and a skin lesion that was being treated.  Plaintiff was seen by nurse Staley on April 9, 2013, concerning his complaints about the lack of physical therapy and his request to transfer to a different facility.  PageID.441.  Nurse Staley contacted the Duane Waters Health Center to obtain specific exercises appropriate for Plaintiff's condition.  On May 6, 2013, Plaintiff complained of growths on the back of his legs and requested a transfer to Duane Waters Health Center for physical therapy. PageID.442-445.  Plaintiff admitted that he was not trying to stand or walk with his braces.  Plaintiff could stand, but could not extend his knees fully.  Plaintiff was advised that non-fatiguing exercise were the appropriate course of treatment.  The next day, Plaintiff requested physical therapy.  The nurse who received the request instructed Plaintiff to comply with the treatment plan.  PageID.446. On May 9, 2013, and May 21, 2013, Plaintiff requested physical therapy.  The reviewing nurse noted that the issue had been addressed and that Plaintiff had received a handout demonstrating the exercises that he should perform.  PageID.447-448.

Plaintiff complained on June 3, 2013, that he was not receiving treatment for his post polio condition.  PageID.449.  Plaintiff was seen by Dr. Bohjanen on June 5, 2013, regarding his request for treatment for post-polio condition and for an accommodation to receive talking books. PageID.450-451.  Plaintiff was seen by Dr. Bonefeld on June 26, 2013.  PageID.453-456.  Dr.

Bonefeld submitted a request for a consultation with a Utilization Manager regarding outpatient physical therapy at Duane Waters Medical Center. On July 1, 2013, Utilization Manager Dr. Harriet Squier reviewed Dr. Bonefeld's request. Dr. Squier suggested an alternative plan because outside physical therapy was not medically necessary at that time, noting that further review of Plaintiff's condition may indicate future accommodation. PageID.457-458.

Plaintiff continued treatment with other medical staff at the prison. On July 30, 2013, Defendant Westcomb reviewed Plaintiff's chart after he visited with a nurse the previous day. PageID.465-466. Defendant Westcomb noted that Plaintiff was evaluated for his post-polio condition and that his request for outside physical therapy had been denied. Defendant Westcomb scheduled Plaintiff for examination with Dr. Bonefeld, who had taken over Plaintiff's primary care. Plaintiff was transferred out of the prison on October 1, 2013.

In the opinion of the undersigned, Plaintiff cannot show that Defendants Berhane and Westcomb acted with deliberate indifference towards Plaintiff's post-polio medical condition. Plaintiff received instructions for exercises that he could perform in his cell, which Defendants have shown was the normal course of treatment for Plaintiff's condition. Plaintiff claims that he should have received outside physical therapy. However, Plaintiff is simply disagreeing with the type of treatment provided. Plaintiff has failed to show a violation of the Eighth Amendment or any federal laws.

Plaintiff filed a motion for a temporary restraining order and / or declaratory and injunctive relief (ECF No. 57), a motion "for Court help in Department of Corrections violation of the ADA/RA section 34 134 retaliation or coercion" (ECF No. 64), and a motion "to elucidate Plaintiff's filings to this Court and rectify this Court's misjudgment" (ECF No. 72). Plaintiff complains that a number of prisons within the MDOC are not ADA compliant. Plaintiff contends

that his MDOC ADA complaints have never been investigated and nothing has been done about his complaints.  Plaintiff asserts that he should not be housed in the Upper Peninsula of Michigan. Plaintiff was recently transferred to the Macomb Correctional Facility, which is located in the Lower Peninsula of Michigan.  (ECF No. 76).  Plaintiff has not asserted that his current housing location violates his rights.  Further, Plaintiff complained that his legal materials have been confiscated by prison staff and that he needs help getting his legal materials back from staff.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).  In exercising that discretion, the court must consider and balance four factors:

1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.  Whether the movant has shown irreparable injury.

3.  Whether the preliminary injunction could harm third parties.

4.  Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under

the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights.  Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motion for a injunctive relief be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 53) be granted and that Defendants Berhane and Westcomb be dismissed from this case without prejudice because Plaintiff failed to exhaust his grievance remedies.  Alternatively, if the Court finds that Plaintiff did exhaust his grievance remedies, it is recommended that the Court grant the motion and dismiss Defendants

Berhane and Westcomb with prejudice because Plaintiff cannot show that his Eighth Amendment or federal rights were violated.

It is further recommended that the Court deny Plaintiff's pending motions (ECF No. 57), (ECF No. 64) and (ECF No. 72). If the Court accepts this recommendation, Plaintiff's complaint will be dismissed.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: April 1, 2016                                    /s/ TIMOTHY P. GREELEY
                                                       TIMOTHY P. GREELEY
                                                       UNITED STATES MAGISTRATE JUDGE